[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION AND JUDGMENT ENTRY
* * * * *
This is an appeal from a judgment of the Lucas County Court of Common Pleas, Juvenile Division, which granted permanent custody of Mary C., daughter of appellant Linda C., to the Lucas County Children Services Board. For the reasons which follow, this court affirms the judgment of the trial court.
Appellant sets forth the following assignments of error:
 "I. THE TRIAL COURT ABUSED ITS DISCRETION IN FINDING THAT THE CHILD CAN NOT BE PLACED WITH THE APPELLANT WITHIN A REASONABLE PERIOD OF TIME OR SHOULD NOT BE PLACED WITH THE APPELLANT.
 "II. THE TRIAL COURT'S FINDING THAT THE APPELLANT FAILED TO REMEDY THE PROBLEMS THAT INITIALLY CAUSED THE CHILD TO BE REMOVED IS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE.
 "III. THE TRIAL COURT'S FINDING THAT THE APPELLANT'S SEVERE AND CHRONIC CHEMICAL DEPENDENCY AND SEVERE AND CHRONIC EMOTIONAL ILLNESS MAKES HER UNABLE TO PROVIDE AN ADEQUATE, PERMENENT [SIC] HOME FOR THE CHILD AT THE PRESENT TIME OR IN THE FORESEEABLE FUTURE WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE."
The facts that are relevant to the issues raised on appeal are as follows. Mary C. was born on March 7, 1995. On March 21, 1995, while Mary was still in the hospital, the Lucas County Children Services Board ("LCCS") filed a complaint in dependency and neglect and a motion for a shelter care hearing. The agency alleged that appellant had not taken appropriate responsibility for Mary's care and had not fed, bathed or diapered the baby and that appellant had inaccurately stated that the hospital would not allow her to do any of those things; that appellant had inadequate knowledge of how to care for an infant; that appellant became angry and swore at the caseworker who tried to interview her and left the room; and that appellant had stated her intention to take Mary home and continue living with the baby's father, who had been convicted of gross sexual imposition and attempted gross sexual imposition involving minors. At the conclusion of the hearing, the trial court awarded emergency temporary custody of Mary to LCCS.[1]
On June 1, 1995, an adjudicatory hearing was held and on July 7, 1995, the trial court found Mary to be a dependent child. Temporary custody was awarded to LCCS. On July 22, 1996, LCCS filed a motion for permanent custody in which it alleged that notwithstanding the services that had been provided appellant, she continued to abuse substances, engage in domestic violence, exhibit poor parental judgment and, generally, after one year, had not resolved the issues her case plan services had been designed to correct. On February 24 and 25, 1997, a hearing was held on the motion and the following relevant testimony was presented.
Edward Vollmar, a counselor with Lucas County Family Services, testified as to his contact with Mary's father, William, and as to the issues with which William was dealing both before and after Mary's birth. Vollmar testified that William had discussed his problems with domestic violence and said that William had told him that the episodes of violence had arisen because he was defending himself against appellant. Vollmar stated that William was unwilling to discuss his convictions for sexual molestation but that he had told Vollmar that he did not receive treatment while he had been incarcerated. John, appellant's brother, testified that Mary had been placed in his care for nearly two years since her birth. John testified that when William and appellant came to the house together for visitations they always argued but that when appellant came by herself she was fine. John stated that appellant at one time had threatened to burn his house down. He testified further that appellant had told him she had stabbed William with a steak knife. John testified that he was interested in obtaining permanent custody of Mary. He stated that appellant's apartment "was not like it should be" and reeked of animal urine. Donna, John's girlfriend, provided testimony that essentially corroborated that of John.
Julie Landry, manager of the Early Intervention program at Harbor Behavioral Health Care, testified as to her work with appellant and William in a twelve-week parenting class that ran from January through March 1996. Landry testified that appellant would attend to Mary but required prompting, demonstration and encouragement. Landry stated that she believed that appellant met the requirements of the program by the end of the session, but that she had some concerns about appellant's ability to parent alone. Landry stated that she recommended support or assistance for appellant.
Michael Hurt, a substance abuse counselor at Compass, testified that he worked with William through the outpatient program in May and June 1996. Hurt stated that William then began the extended care portion of the program but left with an unplanned discharge in October 1996 due to missing too many sessions. Hurt testified further that his records showed that appellant successfully completed the intensive outpatient program at Compass in July 1995 and the extended care portion of the program in September 1995.
Stacy Craddolph, appellant's ongoing caseworker, testified that her contact with appellant began in April or May 1995. Craddolph stated that the problems the agency attempted to address included substance abuse, domestic violence and parenting skills. She testified that services offered appellant included regular meetings, parenting classes and treatment at Compass. Craddolph stated that she had verified in the summer of 1996, and again in early 1997, that appellant was continuing to drink. She testified that she felt it would be in Mary's best interest for permanent custody to be awarded to the agency. She stated further that although some progress had been made, appellant was still at risk as far as problems with domestic violence. Craddolph testified that appellant was not willing to give up her relationship with William in order to be more successful with her case plan and said that she did not think appellant could handle the job of raising her daughter even if William were completely out of her life. Craddolph stated that appellant does not appear to be stable on any given day and that "she snaps, she goes off." Craddolph testified further that she believed appellant may have learned a lot through her case plan services but did not apply it.
Miriam Reeves, a family therapist with Family Services of Northwest Ohio, testified that she had been working with appellant since September 1995. As to appellant's domestic violence issues, Reeves stated that initially appellant was highly motivated and cooperative. Reeves stated further that after appellant was arrested for domestic violence in July 1996, she remained concerned about appellant's poor impulse control and violent acting out. Reeves stated that she continued to be concerned about appellant's relationship with William because appellant did not grasp the negative impact William had on her environment.
Violet Nelson testified that she has used appellant as a babysitter for the past twenty-one years. Nelson stated that appellant had no problems caring for the children and that she had never known appellant to have any outburst of anger. Barb Wheeler testified that she has known appellant for about twenty years and that appellant had taken care of her children without incident.
Howard Filopovich, a psychology assistant and clinical therapist at Unison Behavioral Health Group, testified as to his evaluation of appellant and William in May and June 1995. Filopovich testified that appellant stated that she finds it necessary to hit William sometimes. He testified that appellant's test scores fell in the lower end of the borderline range of intellectual functioning just above mildly mentally retarded; that her verbal scores were markedly below average for her age; that she indicated a high level of ongoing distress, low ego strengths, a negative self-concept and inadequate defensive resources; and that she is likely to be predisposed to abuse alcohol or other addictive substances. Filopovich further testified that he was concerned about appellant's poorly modulated anger and her acting out behavior and felt that due to her low intellectual functioning she might benefit from some supportive services in caring for her child.
At the conclusion of testimony, Mary's guardian ad litem
recommended that permanent custody be awarded to LCCS. On March 11, 1997, the trial court filed its judgment entry in which it found that LCCS made reasonable and diligent efforts to reunite the family but that appellant and William have failed repeatedly for a period of six months or more to remedy the conditions which caused Mary to be placed outside her home; that there is a reasonable probability that Mary will be adopted and that an adoptive placement would positively benefit the child; that a grant of permanent custody would facilitate an adoption and that the child's need for a legally secure placement cannot be achieved without a grant of permanent custody. The trial court further found that Mary C. cannot and should not be returned to the care of either of her parents within a reasonable period of time and that it is in her best interest for permanent custody to be awarded to LCCS. It is from that judgment that appellant appeals.
Appellant does not argue Assignment of Error No. 1 separately but appears to present the statement that the trial court abused its discretion in finding that Mary cannot be placed with appellant within a reasonable period of time as an overview of her second and third assignments of error. All of appellant's arguments will be considered together.
In her second assignment of error, appellant asserts that the trial court's finding that appellant failed to remedy the problems that initially caused Mary to be removed from her home is not supported by clear and convincing evidence. In her third assignment of error, appellant asserts that the trial court's findings that appellant's severe and chronic chemical dependency and emotional illness make her unable to provide an adequate home for Mary also is not supported by clear and convincing evidence.
R.C. 2151.414 provides in pertinent part:
 "(B) The court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 "(1) The child is not abandoned or orphaned and the child cannot be placed with either of his parents within a reasonable time or should not be placed with his parents;
"* * *
 "(D) In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353
[2151.35.3] of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:
 "(1) The reasonable probability of the child being adopted, whether an adoptive placement would positively benefit the child, and whether a grant of permanent custody would facilitate an adoption;
 "(2) The interaction and interrelationship of the child with his parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 "(3) The wishes of the child, as expressed directly by the child or through his guardian ad litem, with due regard for the maturity of the child;
"(4) The custodial history of the child;
 "(5) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.
 "(E) In determining at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 [2151.35.3] of the Revised Code whether a child cannot be placed with either of his parents within a reasonable period of time or should not be placed with his parents, the court shall consider all relevant evidence. If the court determines, by clear and convincing evidence, at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353
[2151.35.3] of the Revised Code that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either of his parents within a reasonable time or should not be placed with his parents:
 (1) Following the placement of the child outside his home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly for a period of six months or more to substantially remedy the conditions causing the child to be placed outside his home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
 "(2) The severe and chronic mental illness, severe and chronic emotional illness, severe mental retardation, severe physical disability, or chemical dependency of the parent makes the parent unable to provide an adequate permanent home for the child at the present time and in the foreseeable future; * * *" [Emphasis added.]
Clear and convincing evidence is that proof which establishes in the mind of the trier of fact a firm conviction as to the allegations sought to be proved. Cross v. Ledford (1954),161 Ohio St. 469.
This court has thoroughly reviewed the record of proceedings in the trial court and, upon consideration thereof, we find that there was clear and convincing evidence to support the lower court's finding that it was in Mary's best interest to grant permanent custody to the Lucas County Children Services Board. At the hearing on the motion for permanent custody, the trial court heard testimony that, while appellant completed the several programs required by her case plan, she has not shown that she was able to apply what she had learned; that appellant was still at risk for involvement with domestic violence; that appellant was not controlling her alcohol abuse; that appellant suffered from poorly modulated anger and "acting out;" and that appellant's brother, who had temporary custody of Mary since birth, was interested in adopting the child. Accordingly, this court finds that the trial court did not err by awarding permanent custody of Mary C. to Lucas County Children Services Board and appellant's first, second and third assignments of error are not well-taken.
On consideration whereof, this court finds that substantial justice was done the party complaining and the judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Court costs of this appeal are assessed to appellant.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 7/1/92.
 _______________________________ George M. Glasser, J.
JUDGE
 _____________________________ James R. Sherck, J.
JUDGE
 _______________________________ Richard W. Knepper, J.
JUDGE
CONCUR.
[1] Mary's father, William, was not married to appellant although he and appellant were living together at the time of Mary's birth. William was involved in this case and participated to some extent in the case plan developed by LCCS but did not appear at the permanent custody hearing. William's parental rights were terminated but he is not a party to this appeal.